IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

ANASTASIA GALE ESPINOSA )
HERNANDEZ, as Personal )
Representative of the Estate of )
BRUNO ELIAS BERMEA, deceased, )
)
Plaintiff, )
)
v. ) No. CIV-18-606-R
)
BOARD OF COUNTY COMMISSIONERS )
OF OKLAHOMA COUNTY; JOHN )
WHETSEL; and ARMOR )
CORRECTIONAL HEALTH )
SERVICES, INC., )
a Florida Corporation, N.A., )
)
Defendants. )

# ORDER

Before the Court are four separate motions to dismiss filed by Defendant Board of County Commissioners (Doc. No. 18); Defendant Whetsel, in his official capacity (Doc. No. 19) and in his individual capacity (Doc. No. 20); and Defendant Armor (Doc. No. 21).[1] Plaintiff filed a single response to the motions filed by the Board and by Sheriff Whetsel in both capacities (Doc. No. 30) and responded to defendant Armor's motion (Doc.

---

[1] Defense counsel on behalf of the Board and Sheriff Whetsel, in both capacities, filed each motion as a "Special Appearance and Motion to Dismiss." The Court notes that on more than one occasion counsel was admonished by Judge West that since 1938 there has not been a distinction between general and special appearances in federal court. *E.g.,* 5B C. Wright & A. Miller, Federal Practice and Procedure § 1344, at 30 (ed. Ed. 204)(technical distinction between general and special appearance abolished; no end accomplished by retaining or using term sin federal practice). *See Cramer v. Oklahoma County Board of County Commissioners,* Case No. CIV-18-179-W, Doc. No. 22 (W.D. Okla. May 30, 2018); *Turner v. Oklahoma County Board of County Commissioners ex rel Oklahoma County Detention Center*, No. CIV-18-36-W, Doc. No. 12 (W.D. Okla. Mar. 14, 2018). Defendants should have simply filed motions to dismiss.

No. 26). Defendants Board, Whetsel, individually, and Armor, each filed a reply in support of dismissal. Upon consideration of the parties' submissions, the Court finds as follows.

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The "plausibility standard" announced in *Twombly* and *Iqbal* is not a "heightened standard" of pleading, but rather a "refined standard." *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Kansas Penn Gaming LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). Under the "refined standard," plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik*, 671 F.3d at 1191, *quoting Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting *Twombly*, 550 U.S. at 570).

"Rule 8(a)(2) still lives. There is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements." *Id.* It remains true tat "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

Plaintiff, as personal representative for the Estate of Bruno Elias Bermea, deceased, filed this action following Mr. Bermea's death while in the custody of the Oklahoma County Sheriff at the Oklahoma County Jail. The Amended Complaint alleges that on June 4, 2016, Mr. Bermea was arrested by officers of the Oklahoma City Police Department and delivered to the jail and that "[t]he defendant Board, defendant Whetsel and defendant Armor were, at all pertinent times, on notice that Mr. Berea was a diabetic, did not have functioning kidneys and was in need of kidney dialysis on a regular basis, multiple times per week." {Doc. No. 16, ¶ 16). Although Mr. Bermea allegedly told certain unidentified detention officers about his diabetes, kidney failure, and the need for dialysis, no such treatment was provided between his June 4, 2016 arrest and his death on June 7, 2016, and Plaintiff contends that officers repeatedly ignored his request for dialysis (Doc. No. 16, ¶¶ 18-20). Plaintiff further alleges that Mr. Bermea had a colostomy bag and that during his three days at the Oklahoma County Jail no officer or medical personnel attended to his bag or assisted him in any way. (Doc. No. 16, ¶ 24). Rather, two of his cellmates assisted him. (*Id.*). Plaintiff alleges that, in light of the physical assessment required upon intake to the jail, jail and Armor personnel should have known about Mr. Bermea's colostomy bag. (Doc. No. 16, ¶ 25).

Plaintiff further alleges that she called the jail to advise personnel, who are not identified in the Amended Complaint, that Mr. Bermea lacked kidney function and needed dialysis. (Doc. No. 16, ¶¶ 29-31). She alleges she spoke with an employee of Armor by telephone and appeared at the jail more than once during his detention to advise personnel of his need for dialysis. The decedent's mother also called and visited the jail and informed

3

officers, again unidentified, that Mr. Bermea required dialysis (Doc. No. 16, ¶ 32). Plaintiff alleges that Defendants failed to provide medical care to Mr. Bermea resulting in his death at the jail on June 7, 2016. She alleges "[t]he defendant Board and defendant Whetsel have admitted the existence of a policy at the Oklahoma County Jail whereby Jail detention officers would determine the reality of a prisoner's medical complaints without consultation with or calling in medical personnel to make such decisions." (Doc. No. 16, ¶ 58). Additional factual allegations will be set forth herein as related to the individual movants.

The Court notes at the outset that the Motion to Dismiss filed by the Board strays from the intent of such a motion by including five pages of facts not contained in the Amended Complaint which are not subject to consideration by the Court. Although the Court may take judicial notice of public records, the facts included by the Defendant go far beyond the information available in the underlying criminal cases involving Mr. Bermea. Those additional facts are not part of the Court's consideration herein. Ironically, Defendants complain about factual allegations contained in the response to the motions to dismiss, which the Court has also excluded from its consideration.

Before delving into the substance of Plaintiffs' claims, the Court finds it easiest to remove any redundant claims from its consideration. Plaintiff sued both the Board of County Commissioners and Sheriff Whetsel in his official capacity. Although not argued by Defendant Whetsel in his motion, the official capacity claim against Defendant Whetsel is a claim against Oklahoma County, and therefore is redundant to Count I of the Amended Complaint. *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (lawsuits against

employees in an official capacity "represent only another way of pleading an action against an entity of which an officer is an agent"); Okla. Stat. tit 19, § 4 (a suit against a county must be brought by naming the board of county commissioners of that county); *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (bringing "a claim against [a sheriff] in his official capacity … is the same as bringing a suit against the county.") Accordingly, Count II of the Amended Complaint hereby is DISMISSED; the Motion to Dismiss (Doc. No. 19) is GRANTED and the Court turns to the remainder of Plaintiff's claims.

Because Mr. Bermea was a detainee at the Oklahoma County Jail, the § 1983 claims alleging that he was denied medical care are considered under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment. *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990). Prison officials must provide "humane conditions of confinement, including … medical care …" *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Plaintiff must allege facts demonstrating both the objective and subjective prongs of deliberate indifference to bring a valid deliberate indifference claim. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).

Under the objective prong, a prisoner must allege that the complained-of injury or deprivation is, objectively, "sufficiently serious." *Tafoya*, 516 F.3d at 916 (citing *Farmer*, 511 U.S. at 834). A medical need is sufficiently serious if "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)(internal quotation marks and citation omitted). "[I]t is the

harm claimed by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely 'the symptoms presented at the time the prison employee had contact with the prisoner.'" *Martinez,* 563 F.3d at 1088 (quoting *Mata v. Saiz,* 427 F.3d 745, 753-53 (10th Cir. 2005)). The allegation that Plaintiff died because he did not obtain medical treatment for the absence of kidney function is sufficiently severe to satisfy the objective prong. *See Martinez,* 463 F.3d at 1088 (observing that death, "without doubt," is "sufficiently serious to meet the objective component" (citation omitted)).

The subjective component of the deliberate indifference test "requires a plaintiff to demonstrate that officials acted with a 'sufficiently culpable state of mind.'" *Vega v. Davis*, 673 F. App'x 885, 890 (10th Cir. 2016) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Further, "a prison official cannot be liable unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (internal quotation marks and citation omitted). Furthermore, the subjective component requires the official to disregard the specific risk claimed by the plaintiff. *Crocker v. Glanz*, 752 F. App'x 564, 569 (10th Cir. 2018).[2]

---

[2] There is the potential for debate over what standard applies to a pretrial detainee following the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470 (2015), holding that the Eighth Amendment standard for excessive force claims brought by prisoners, requiring proof that a defendant acted with a culpable state of mind, does not apply to Fourteenth Amendment excessive force claims brought by pretrial detainees. 135 S. Ct. at 2475. Rather, a pretrial detainee is only required to show that the force purposely or knowingly used against him was "objectively unreasonable." *Id.* at 2473. The parties have not addressed the issue, and in an unpublished decision, the Tenth Circuit noted that other circuits "are split on whether *Kingsley* alters the standard for conditions of confinement and inadequate medical care claims brought by pretrial detainees." *Estate of Vallina v. Cty. of Teller Sheriff's Office,* 757 F. App'x 643, 646 (10th Cir. 2018); *see also Crocker v. Glanz,* 752 F. App'x at 569 (noting *Kingsley* was an excessive-force claim where there was no question about the intentional use of force against the prisoner and suggesting that its

Plaintiff is seeking to hold Sheriff Whetsel, the Board of County Commissioners, and Armor Correctional Healthcare liable for the acts or omissions of their employees. Plaintiff may not sue the County (through the Board of County Commissioners), the Sheriff, or Armor under § 1983 merely on the grounds of respondeat superior, that is, because an employee violated plaintiff's constitutional rights. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (stating principle as applicable to local governmental defendant); *Green v. Denning*, 465 F. App'x 804, 086 (10th Cir. 2012) (applying principle to prison health contractor). Rather, Plaintiff must allege with regard to each particular Defendant that its policies or customs deprived Mr. Bermea of his federally protected rights. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997).

In Count III, Plaintiff seeks relief from Defendant Whetsel in his individual capacity. Defendant Whetsel argues dismissal of this claim is appropriate because Plaintiff has failed to state a claim for relief and further because he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). Once the defense of qualified immunity has been raised, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the

---

analysis may not apply to a failure to provide adequate medical care or screening). However, given that the parties have not raised this issue, and the Tenth Circuit's last published statement on the appropriate test indicates that the standard has not changed at this time (*see Perry v. Durborow,* 892 F.3d 1116, 1121 (10th Cir. 2018)), the Court proceeds on the basis that the Fourteenth and Eighth Amendment standards are identical for purposes of Plaintiff's claims. *See Estate of Vallina,* 757 F. App'x at 647.

right was 'clearly established' at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011)). Regarding the requisite proof of clearly established law, "[a] plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Quinn*, 780 F.3d at 1005 (quoting *Weise v. Casper),* 593 F.3d 1163, 1167 (10th Cir. 2010))*; see also Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011).[3]

The Court is free to address either prong of the qualified immunity analysis first. Where, as here, Plaintiff alleges denial of access to medical care by a pretrial detainee, the issue of whether the law was clearly established is straightforward. It has been clearly established for decades that "pretrial detainees are entitled under the fourteenth amendment's due process clause to the same degree of protection regarding medical attention afforded convicted inmates under the eight amendment." *See, e.g., Martin v. Board of County Commr's of County of Pueblo,* 909 F.2d 405, 406 (1990). Accordingly, the Court considers whether Plaintiff has sufficiently alleged that Mr. Berea's constitutional rights were violated by Defendant Whetsel, who is sued because of his role as Sheriff.

---

[3] Contrary to Plaintiff's arguments in response to the motion, it is entirely permissible for Defendant to have raised the issue of qualified immunity in a motion to dismiss. *See, e.g., Crocker v. Glanz,* 752 F. App'x 564 (10th Cir. 2018). It would have benefitted all parties had Defendant Whetsel actually relied upon cases decided at this stage rather than summary judgment cases; regardless, Defendant is not precluded from raising the issue, nor would it be inappropriate for the Court to dismiss the claims against Defendant Whetsel, in his individual capacity, on the basis that he is entitled to qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (qualified immunity questions should be resolved at the earliest possible stage of litigation.

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011).[4] "[S]upervisory liability allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements … a policy … which subjects, or causes to be subjected that plaintiff to the deprivation of any rights … secured by the Constitution." *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (internal quotation marks and citation omitted). To state a claim for § 1983 supervisory liability, a plaintiff must allege "(1) the defendant promulgated, created, implemented or possessed responsibility for the continuing operation of a policy that (2) caused the complained-of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). Although many of Plaintiff's allegations are nothing more than vague assertions that Defendant Whetsel failed to properly hire, train, supervise, and retain jail employees, Plaintiff includes one allegation of an alleged policy that the Court concludes pushes Count III over the plausibility line.

> The Defendant Board and defendant Whetsel have admitted the existence of a policy at the Oklahoma County Jail whereby Jail detention officers would determine the reality of a prisoner's medical complaints without consultation with or calling in medical personnel to make such decision.

---

[4] The Court presumes Plaintiff did not intend to seek relief against Defendant Whetsel in his individual capacity on the basis of personal liability, because the arguments in response to the Motion to Dismiss incorporate the arguments addressing the official capacity claims against Defendant Whetsel, which in turn adopt the arguments against dismissal of Plaintiff's claim against the Board (Doc. No. 30, p. 21). The claim against Defendant Whetsel in his official capacity and the Board must be premised on municipal liability, which is more akin to supervisory liability under § 1983 as opposed to personal liability. To the extent Plaintiff attempted to rely on a theory of personal liability, the Amended Complaint fails to sufficiently allege facts to support such a claim.

9

(Doc. No. 16, ¶ 58). Plaintiff further alleges that at all times Defendant Whetsel was aware that Mr. Bermea lacked functioning kidneys and needed dialysis in order to survive, that despite pleas to jail personnel for medical assistance, no medical personnel visited Mr. Bermea in his cell between his arrival and death. These facts support a claim that Defendant Whetsel's policy of allowing jail personnel to serve as medical screeners set the wheels of the alleged constitutional violation in motion. Additionally, Plaintiff alleges that the medical provider, Armor, was not paid for a period of time and that thirty deaths occurred at the Jail in recent years. Admittedly, not all thirty deaths during the period identified by Plaintiff are likely to be tied to constitutionally inadequate medical care; however, the allegation supports Plaintiff's contention that Defendant Whetsel acted with the requisite state of mind and therefore is sufficient to state a claim against the former Sheriff in his individual capacity. Accordingly, Defendant Whetsel is not entitled to qualified immunity and the Motion to Dismiss as it relates to Count III is DENIED.

In Count I, Plaintiff seeks relief under § 1983 against the Board of County Commissioners. Defendant Board argues that the claim should be dismissed because Plaintiff lacks standing to seek relief as she does not allege injury fairly traceable to the acts or omissions of the Board. Article III standing requires, at an "irreducible constitutional minimum" that a party show an actual or threatened injury as a result of the defendant's allegedly illegal conduct, the injury can be traced to the challenged action, and is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61. The Court finds the Board's reliance on the doctrine of standing misplaced. Indeed, Defendant Board acknowledges that the cases upon which it relies did not address

standing. (Doc. No. 18, p. 11). If Plaintiff has alleged sufficient facts to support a claim against the Board, the death of Mr. Bermea may be fairly traceable to the action or inaction of the Board.[5]

The Board next argues it is not the proper party because it is an entity distinct from the Sheriff's office and that the Sheriff, not the Board, has "charge and custody of the jail of his county." Okla. Stat. tit. 19, § 513. The Board cannot, however, defeat potential liability merely by demonstrating that the Sheriff is the official policymaker at the Oklahoma County Jail. Indeed, it is because the Sheriff is the official policymaker for the Jail that the Board of County Commissioners is an appropriate § 1983 Defendant.[6] A municipality is liable under § 1983 for acts of a municipal official in his official capacity if that official possesses final policymaking authority to establish municipal policy with respect to acts in question. *See Houston v. Reich*, 932 F.2d 883, 887 (10th Cir.1991) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)); *Layton v. Board of County Comm'rs of Oklahoma County*, 512 F. App'x 861, 871 (10th Cir. 2013)(County may be liable on basis of Sheriff's actions as final policymaker with regard to the jail); *Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999) ("[T]he county may be liable on the basis that [the sheriff] is a final policymaker with regard to its jail, such that his actions 'may fairly be

---

[5] Defendant Board argues that it is critical for the plaintiff to identify which official exercises policymaking authority in the area about which she is complaining. Plaintiff alleges in paragraph 51 of the Amended Complaint that the Sheriff is the official policymaker with regard to the Jail. This allegation is consistent with Oklahoma law.

[6] Whether an official has final policymaking authority for purposes of § 1983 is a question of state law. *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 786 (1997). Under Oklahoma law, the sheriff is the final policymaker regarding the county's jail. Okla. Stat. tit. 19, § 513; Okla. Stat. tit. 57, § 47; see also *Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999). Thus, the County (by suit against the Board) may be liable for the Sheriff's actions as a final policymaker regarding the Oklahoma County Jail.

said to be those of the municipality.'") (quoting *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)). Moreover, Oklahoma law requires that the board of county commissioners in each county provide a jail "for the safekeeping of prisoners lawfully committed." Okla. Stat. tit. 57, § 41.5. Providing a jail for the safekeeping of prisoners is a constitutional duty as well as a statutory duty. *Bryson v. Oklahoma County, ex rel. Okla. County Detention Center*, 261 P.3d 627, 637 (Okla. Civ. App. 2011).[7] Having resolved the preliminary issues, the Court turns to Defendant Board's contention that Plaintiff has failed to allege a constitutional violation.

To establish a § 1983 claim against the Board of County Commissioners, Plaintiff must establish that Mr. Bermea's constitutional rights were violated and that an official policy or custom of the Board caused the violation. *See Schneider v. City of Grand Junctions Police* Dep't, 717 F.3d 760, 770 (10th Cir. 2013). As with Defendant Whetsel, the County, through the Board, cannot be held liable under a theory of respondeat superior. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000).

> A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law' "; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the

---

[7] The Board also argues that state law cannot provide the basis for naming the appropriate party in a federal § 1983 claim. Contrary to Defendant's argument, however, Federal Rule of Civil Procedure 17 mandates that the Court rely upon state law for determining the capacity of a person or entity to be sued. At this juncture it is well accepted that, pursuant to Okla. Stat. tit. 19 § 4, to sue a county in Oklahoma, a plaintiff must name the Board of County Commissioners for that County.

12

> "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)). Plaintiff alleges in paragraph 51 of the Amended Complaint that Defendant Whetsel is policymaker on behalf of the Board with regard to the Jail. Here, the Court previously concluded that the allegations against Sheriff Whetsel were sufficient to state a claim against him in his supervisory capacity under § 1983. Because Plaintiff alleges Sheriff Whetsel is the final policymaker with regard to the Jail for the County, Plaintiff has sufficiently pled a § 1983 against the Board. *See DuBois v. Bd. of Cty. Comm'rs of Mayes Cty., Oklahoma*, No. 12-CV-677-JED-PJC, 2014 WL 4810332, at *7 (N.D. Okla. Sept. 29, 2014)("a policy of a county sheriff in his final policymaking capacity is a county policy, such that a county may be sued under § 1983 so long as such policy was the moving force behind a constitutional violation") *see also e.g. Deschenie v. Board of Education of Central Consolidated School Dist. No. 22*, 2005 WL 8163918 (D.N.M. April 29, 2005)("The Board could be liable to [plaintiff] based on actions taken by [defendant] as the final policy maker for the Board.") Accordingly, and for the reasons set forth above, the Court denies Defendant Board's Motion to Dismiss Count I of the Amended Complaint.

Plaintiff also seeks relief from Armor Correctional Health Services, Inc., citing both 42 U.S.C. § 1983 and Oklahoma state law. Defendant Armor seeks dismissal of Plaintiff's 42 U.S.C. § 1983 claim, asserting that Plaintiff has failed to establish a constitutional violation by any Armor employee, that she has failed to allege a claim premised on a theory

of municipal liability, that her claims sound in negligence and therefore do not state a constitutional tort, and that she fails to allege that any act or omission by Armor caused Mr. Bermea's death.[8] Armor also seeks dismissal of Plaintiff's state law claim, asserting that it is entitled to immunity under the Oklahoma Governmental Tort Claims Act and that Plaintiff's claim is untimely.

Armor contends Plaintiff has failed to plead a viable § 1983 claim because Plaintiff fails to sufficiently allege that Mr. Bermea's constitutional rights were violated by an employee. In order to state a viable deliberate indifference claim under the Eighth, or in this case Fourteenth, Amendment claim in a prisoner case, a plaintiff must allege:

> (1) "actual knowledge of the specific risk of harm [to the detainee] ... or that the risk was so substantial or pervasive that knowledge can be inferred;" (2) "fail[ure] to take reasonable measures to avert the harm;" and (3) "that failure to take such measures in light of [the] knowledge, actual or inferred, justifies liability for the attendant consequences of [the] conduct, even though unintended."

*Estate of Hocker by Hocker v. Walsh*, 22 F.3d 995, 1000 (10th Cir 1994) (quoting *Berry v. City of Muskogee*, 900 F.2d 1489, 1498 (10th Cir. 1990)). Plaintiff sufficiently alleges violation of Mr. Bermea's rights under the Fourteenth Amendment with regard to the denial of medical care by an Armor employee. She alleges that Armor was on notice of his condition, and that he received no treatment despite his begging for dialysis and a phone call from his sister to an Armor nurse informing her of his lack of kidney function and the need for immediate dialysis. Plaintiff further alleges that, as a result of the failure to ensure

---

[8] Defendant Armor also asks the Court to dismiss any claim for punitive damages against the corporation; however, as noted by Plaintiff, she is not seeking punitive damages against Armor under § 1983.

14

that Mr. Bermea had access to dialysis treatment, he died in the jail on June 7, 2016. Mr. Bermea's death was clearly sufficient to satisfy the objective prong. Furthermore, the initial intake, Mr. Bermea's request for medical care, and the telephone call that informed a nurse of Mr. Bermea's lack of kidney function and the need for dialysis, coupled with the allegation that he did not receive such treatment, is sufficient to state a claim for the violation of Mr. Bermea's constitutional rights by one or more employees of Armor -- that is, she alleges sufficient facts to support an inference that at least one Armor employee knew facts supporting an inference of a substantial risk of serious harm and disregarded the risk.

Such a finding does not end the Court's inquiry with regard to the sufficiency of Plaintiff's allegations against Defendant Armor, because private companies hired by governmental entities to perform services on their behalf, including medical providers, may not be held liable under § 1983 for the "unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted). Rather, as with the County, Armor will be held liable only for its own acts, acts it officially sanctioned or ordered. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (quoting *Pembaur,* 475 U.S. at 480).[9]

Plaintiff alleges Defendant Armor had a contract to provide medical treatment to persons detained at the Oklahoma County Detention Center and that it was delegated

---

[9] Armor argues it cannot be held liable because it lacked final decision-making authority with regard to the Jail. Plaintiff has alleged that authority over medical decisions was delegated to Armor, such that it had decision-making authority. Although these allegations may be inconsistent with her contention that Defendant Whetsel was the final policymaker, she is permitted to plead inconsistent theories of recovery. *See* Fed. R. Civ. P. 8(d)(3).

15

policy-making authority regarding medical matters related to inmates. (Doc. No. 16, ¶¶ 77-79). Plaintiff further alleges:

> Defendant Armor created and/or maintained medical-related policies at the Oklahoma County Jail such that prisoners, including Mr. Bermea, were not adequately screened for life threatening conditions.

*Id.* ¶ 82.

> Defendant Armor created and/or maintained medical-related policies at the Oklahoma County Jail such that life sustaining treatment was denied prisoners, including Mr. Bermea.

*Id.* ¶ 83 and;

> Defendant Armor created and/or maintained medical-related policies at the Oklahoma County Jail whereby Jail detention officers acted as gatekeepers for determining whether prisoners, including Mr. Bermea, would be seen by healthcare providers.

*Id.* at ¶ 84. The Court finds that Plaintiff's allegations are sufficient to allege a policy by Defendant Armor with regard to an alleged failure to provide adequate mechanisms for the delivery of healthcare to inmates whose circumstances indicated a need for such care. The Court finds the plausible allegations and the reasonable inferences drawn therefrom in Plaintiff's Amended Complaint are sufficient to state a claim in Count V. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court [exercising its judicial experience and common sense] to draw the reasonable inference that the defendant is liable for the misconduct alleged").

As noted above, Defendant Armor asserts that Plaintiff's state law claims are barred by the statute of limitations, because the action was filed more than one year after Mr.

Bermea's June 7, 2016 death. In response, Plaintiff argues that Okla. Stat. tit. 12 § 95(A)(11) violates the Fourteenth Amendment Equal Protection Clause and the ban on special laws set forth in Article V, § 46 of the Oklahoma Constitution.(Doc. No. 26, p. 12). The Court need not address Plaintiff's contention that the statute of limitations provision upon which Defendant Armor relies is unconstitutional, because Plaintiff's claim against Armor is barred by the Oklahoma Governmental Tort Claims Act as interpreted by the Oklahoma Supreme Court.

The GTCA generally immunizes "the state, its political subdivisions, and all of their employees acting within the scope of their employment" from liability for torts. Okla. Stat. tit. 51, § 152.1(A); see also Okla. Stat. tit. 51, § 163(C) (precluding tort actions against "an employee of the state or political subdivision acting within the scope of his employment"). This immunity is subject to a limited waiver for the state and its political subdivisions, but "only to the extent and in the manner provided" in the Act. Okla. Stat. tit. 51, § 152.1(B). The GTCA specifically prohibits tort suits, including common law torts, arising out of the "operation or maintenance of any prison, jail, or correctional facility." See Okla. Stat. tit. 51 §§ 152(14); 155(25). The Amended Complaint alleges that Armor is a corporation that was retained to provide medical care to inmates at the Oklahoma County Jail and acted under color of state law and under authority delegated to it by contract.

> In *Barrios v. Haskell County Public Facilities Auth.*, 2018 OK 90 (Okla. Dec. 4, 2018), the state Supreme Court specifically addressed the issue of whether jail healthcare contractors such as Armor and its employees are immune from tort liability under the state's GTCA. 51 O.S. § 151 *et seq*. It found that "the staff of a healthcare contractor at a jail are 'employees' who are entitled to tort immunity under the GTCA by virtue of section 152(7)(b), 153(A), and 155(25)." *Id.*, n. 5 (emphasis added). Based on this finding, the

17

court reasoned that independent contractors who provide health care services to county jails (like Armor), and their staff, should also be considered to be "employees" under the GTCA and are therefore entitled to the same immunity from tort claims. *Id*. *See also Prince v. Turn Key Health Clinics, LLC*, Case No. 18-CV-282 (N.D. Okla. Jan. 16, 2019), (citing *Barrios* in granting defendant's motion to dismiss a state law negligence claim against a prison health care contractor).

*Crocker v. Regalado*, No. 17-cv-149-TCK-FHM, 2019 WL 2146595 at *4 (N.D. Okla. May 16, 2019). Pursuant to the Oklahoma Supreme Court's ruling in *Barrios*, the Court concludes that the Oklahoma GTCA immunity provisions apply to the employees of Armor who are therefore exempt from tort liability for Plaintiff's negligence claim.[10] Accordingly, Count V is hereby dismissed with prejudice.

For the reasons set forth herein, the Motion to Dismiss filed by Defendant Whetsel, in his official capacity (Doc. No. 20) is hereby GRANTED. The Motions to Dismiss filed by the Board and by Defendant Whetsel in his individual capacity (Doc. Nos. 18 and 19) are hereby DENIED. Defendant Armor's Motion to Dismiss (Doc. No. 21) is GRANTED IN PART AND DENIED IN PART) as set forth herein.

IT IS SO ORDERED this 12th day of July 2019.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[10] Defendant addressed immunity under the Act in its Motion to Dismiss, Plaintiff's response did not and thus he has waived any argument.